John L. Amsden, Esq.
Justin P. Stalpes, Esq.
BECK, AMSDEN & STALPES, PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
(t) 406-586-8700
(f) 406-586-8960
amsden@becklawyers.com
justin@becklawyers.com

*Attorneys for Petitioners*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| MATT BARKER, TERRIL BERNHARDT, DWAYNE BINKLEY, MARK BOESCH, MIKE CONRAD, RANDALL DOANE, KEN DURIE, DAMIAN EDWARDS, MIKE ELLEN, DANIEL ENDECOTT, RYAN EWER, CHUCK FYFE, MIKE GATES, JASON GORDON, RICK HAJEK, DAVIS B. HARRIS, THOMAS HARTZELL, RANDY HILL, TRAVIS HILL, GRAHAM HYDE, TYLER JARVIS, GERALD JELLETICH, PAUL KENNY, ROBERT MATTIJETZ, JEFF MCCHRISTIAN, CHRIS MCPHERSON, LESTER MEINZEN, ERIN MESSEX, MARK MILLER, BRUCE MILLER, ISAAC MILSTEAD, DAVID NORDMAN, RANDY PHILLIPS, DENNIS K. RAMEY, GREGORY RAUER, MILES RAUER, MICHAEL RYKER, | Cause No.: CV-18-179-DLC **BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR: (1) PRELIMINARY APPROVAL OF MEDIATED SETTLEMENT AGREEMENT; (2) APPOINTMENT OF REPLACEMENT ESOP TRUSTEE; (3) APPROVAL OF FORM AND TIMING OF PROPOSED NOTICE OF SETTLEMENT AND OPPORTUNITY TO OBJECT; (4) APPROVAL OF PROPRIETY OF BAR ORDER; AND (5) SETTING HEARING FOR FINAL APPROVAL** |

ALLEN SCHMIDT, BRETT
SHARBONO, ROB SIMS,
WILLIAM "BERT" SMEAD,
MARVIN SNEDIGAR, JONI
SOLANDER, JASON SPEK,
ROGER STEVENS, KI
STODDARD, RICHARD WAYNE
SUMMERS, STEVE TENOLD,
KENNETH TICHENOR, ZACH
TITECA, DAN WALDO, DON
WHITEHAIR AND PATRICK
WURSTER

              Petitioners,

     v.

SELWAY CORPORATION and the
SELWAY CORPORATION
EMPLOYEE STOCK OWNERSHIP
PLAN,

              Respondents.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

EXHIBIT INDEX .............................................................................v

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................1

    A. Allegations Against Respondents ..................................................1

    B. Mediated Settlement Agreement ..................................................3

    C. This Action Was Initiated to Obtain Equitable and Declaratory
       Relief Under ERISA ................................................................9

DISCUSSION ...............................................................................10

    A. Preliminary Approval of the Settlement Agreement Is Appropriate............10

        1.    Preliminary Approval Is Appropriate Under Factors
             Derived From Fed. R. Civ. P. 23.1......................................10

        2.    Settlement Is in the Best Interests of Plan Participants
             as Required by PTE 2003-39 ...........................................16

    B. The Court Should Appoint a Replacement Trustee for the ESOP ..............19

    C. Entry of a Bar Order Is Appropriate ............................................20

    D. The Court Should Approve the Proposed Form and Timing of Notice
       to Potential Claimants Who Will Be Subject to the Bar Order ...................22

CONCLUSION ..............................................................................25

CERTIFICATE OF COMPLIANCE......................................................26

i

# TABLE OF AUTHORITIES

**Case Law:**

*Armstrong v. Board of School Directors*,
    616 F.2d 305 (7th Cir. 1980) ................................................................. 23-24

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) ...........................................................................23

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d Cir 1995) ...................................................................... 20-21

*Franklin v. Kaypro Corp*.,
    884 F.2d 1222 (9th Cir. 1989) ......................................................................20

*Gilman v. Independence Blue Cross*,
    1997 WL 633568 (E.D. Pa. 1997) .......................................................... 24-25

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ........................................................................23

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ......................................................................12

*In re Jiffy Lube Securities Litig.*,
    927 F.2d 155 (4th Cir. 1991) ........................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................. 13-14

*In re Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ......................................................................21

*In re Prudential Ins. Co. of America Sales Practice Litig.*
    962 F. Supp. 450 (D. N.J. 1997)...................................................................25

*John Boettcher Sewer & Excavating Co. v. Midwest Operating
Engines Welfare Fund,*
    803 F. Supp. 1420 (N.D. Indiana 1992) ......................................................16

*Koerner v. Copenhaver*,
2014 WL 5544051 (C.D. Ill. Nov. 3, 2014) ........................................... 10-12

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ...................................................... 10-12, 15, 23

*Milstein v. Werner*,
57 F.R.D. 515 (S.D.N.Y. 1972) ......................................................24

*Munford Inc. v. Munford Inc.*,
97 F.3d 449 (11th Cir. 1996) ......................................................21

*Republic Nat'l Life Ins. Co. v. Beasley*,
73 F.R.D. 658 (S.D.N.Y. 1977) ......................................................15

*Rispler v. Sol Spitz Co.*,
418 F. Supp. 2d 82 (E.D. N.Y. 2005) ..........................................10

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ......................................................24

*Susquehanna Corp. v. Korholz*,
84 F.R.D. 316 (N.D. Ill. 1979) ......................................................12

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ......................................................24

**Other Authorities:**

Fed. R. Civ. P. 23.1 ...................................................... 10, 22-23

68 Fed. Reg. 75632 (Dec. 31, 2003) ...................................16-17, 19-20

28 U.S.C. § 2201 ......................................................9

28 U.S.C. § 2202 ......................................................9

29 U.S.C. § 1106(a)(1)(A) ......................................................16

29 U.S.C. § 1106(a(1)(D) ......................................................16

29 U.S.C. § 1132 ........................................................................................... 22-23

29 U.S.C.A. § 1104(a)(1) ................................................................................. 20

29 U.S.C.A. § 1106(a)(1)(D), (b)(1) ................................................................ 20

29 U.S.C.A. § 1109(a) ...................................................................................... 20

# EXHIBIT INDEX

Exhibit 1,
      Exp. Rpt. of N. Abdrasilova (Apr. 11, 2018) ...................................................3

Exhibit 2,
      Exp. Rpt. of R. Hegger (April 11, 2018) .......................................................3

Exhibit 3,
      Exp. Rpt. of J. Krenzel (Mar. 6, 2018) ........................................................3

Exhibit 4,
      Settlement Term Sheet..............................................................................4, 22

# INTRODUCTION

Petitioners are current or former participants in the Selway Corporation Employee Stock Ownership Plan ("Selway ESOP"). Petitioners asserted claims against Selway and its officers and directors alleging improper use of corporate assets and breach of fiduciary duties. Following mediation with Tracy Axelberg on April 18-19, 2018, the parties and two liability insurers reached a mediated settlement agreement and now seek preliminary approval of the terms. The parties further seek approval of the form and timing of proposed notice of settlement and opportunity to object, as well as approval of a bar order. Finally, the parties ask that the Court set a hearing for final approval after participants in the subject ESOP have had an opportunity to be heard concerning the proposed settlement.

# BACKGROUND

## A.    Allegations Against Respondents.

In April of 2017, Petitioner Steve Tenold filed a lawsuit against Selway Corporation and its President alleging breach of Mr. Tenold's deferred compensation contract and other claims. Mr. Tenold was represented by the same counsel that presently represents Petitioners.

In the course of that litigation, Mr. Tenold's counsel requested and received voluminous discovery documents, including tens of thousands of pages of Selway Corporation's records, and took several depositions. As a result of the discovery

materials received, Petitioners contend they identified various breaches of duties resulting in significant damages to the Selway ESOP.

Specifically, they allege that after the ESOP became the sole shareholder of Selway Corporation in 1999, one of the original owners, Max Downing, continued as President of the corporation, a trustee and fiduciary of the ESOP and a member of the Board of Directors. Petitioners contended that, serving in these multiple capacities, Mr. Downing failed to follow the systems of checks-and-balances intended to protect the value of the ESOP's shares. Petitioners allege that the ESOP did not have an advisory committee, for example. Mr. Downing selected other members of the Board of Directors, who were appointed without correctly following election procedures. Shareholder and trustee meetings were rarely convened. Petitioners allege that Mr. Downing failed to fulfill fiduciary and other duties, and entered transactions which constituted conflicted interest transactions detrimental to Selway Corporation, and ultimately the ESOP.

Petitioners notified Selway and the ESOP trustees that they were asserting claims as ESOP participants, individually and in a representative capacity on behalf of the ESOP, and made an initial pre-litigation demand. Over the course of the next several months, Petitioners provided Selway and its insurers with five expert reports and a draft complaint detailing the allegations contemplated against Selway and ERISA fiduciaries, including, *inter alia*, breach of corporate duties,

breach of ERISA fiduciary duties, shareholder derivative claims, negligence, negligent infliction of emotional distress, retaliatory firings, and punitive damages. Mr. Downing and Selway Corporation disputed the allegations.

The parties engaged in discovery of Petitioners' allegations of breaches of fiduciary duties under federal and state law, including multiple depositions of witnesses, corporate officers and plan fiduciaries. Petitioners' experts conducted and disclosed detailed analyses supporting the Petitioners' contentions as to both the breaches of duties and the extent of financial losses caused thereby. Exh. 1, Exp. Rpt. of N. Abdrasilova (Apr. 11, 2018); Exh. 2, Exp. Rpt. of R. Hegger (April 11, 2018); Exh. 3, Exp. Rpt. of J. Krenzel (Mar. 6, 2018).

## B.     Mediated Settlement Agreement.

Although the allegations are disputed, Respondents and other releasees acknowledged that the cost and risks of litigation, the technical nature of the claims, the expansive scope of the matters alleged, the potential impact on Selway Corporation and its operations, and judicial economy constituted factors sufficient to justify a pre-litigation mediation.

The parties agreed to participate in a pre-litigation mediation. The mediation took place with the understanding that if it were unsuccessful, Petitioners would proceed to assert their ERISA and other claims in this Court.

Following an extensive exchange of documents and other information, the parties conducted a mediation with Tracy Axelberg on April 18-19, 2018. Petitioners and Scottsdale Insurance Company and Travelers Casualty and Surety Company of America (liability insurers for Selway Corporation), as well as corporate and ESOP fiduciaries participated in the mediation.

As a result of that mediation, the parties have reached a comprehensive settlement agreement disposing of the claims asserted by Steve Tenold in the state court litigation as well as the claims asserted by the other Petitioners herein. A true, correct and complete copy of the negotiated Settlement Term Sheet is attached hereto as Exhibit 4. Parties to the agreement are:

Claimants:    Steve Tenold and the individuals listed on Ex. "A" hereto in their individual capacities, in their capacity as representatives of the Selway Corporation Employee Stock Ownership Plan and Trust (hereafter collectively the "Claimants"), and derivatively on behalf of Selway Corporation. Claimants are represented by John L. Amsden and Justin Stalpes of Beck, Amsden and Stalpes, pllc.

Releasees:    a) Respondents in pending Cause No. DV-17-159 ("Pending Cause") before the Montana Twenty First Judicial District Court, Ravalli County (Selway Corporation and Max Downing), b) the potential Respondents in litigation threatened by the above-identified Claimants (Selway Corporation and its directors and officers) ("Threatened Cause"), c) past and present ESOP Trustees and Fiduciaries and their attorneys, accountants, auditors and other agents d) heirs, personal representatives, successors, assigns, agents, officers (past and present), directors (past and present),

partners, employees, attorneys, and insurers of each of the individuals and entities identified in subparts a), b), c) and d) above.

Insurers:     Travelers Casualty and Surety Company of America, its parents, subsidiaries and affiliates ("Travelers") and Scottsdale Insurance Company ("Scottsdale").

The following are the material terms of the agreement:

1.  Scottsdale shall pay toward the settlement $3,000,000 (Three Million and No/100 Dollars) less Defense Expenses that have been paid or will be paid by Scottsdale pursuant to paragraph 2 below. Scottsdale shall make its payment toward settlement within 30 days following Claimants' execution of the Release (the term "Release" is in the defined below) whichever is later.

2.  Scottsdale shall pay to Reep, Bell, Laird and Jasper, PC and Cotner Law PLLC any and all Defense Expenses that have been submitted to Scottsdale for reimbursement to date and any and all expert fees incurred with experts approved by Scottsdale through the date of distribution. Scottsdale shall pay unbilled and future Defense Expenses in accordance with the requirements of the Defense Funding Agreement.

3.  Travelers shall pay toward the settlement $2,500,000 (Two Million Five Hundred Thousand and No/100 Dollars) less Defense Expenses incurred through court approval of the proposed settlement or Claimants' execution of the Release, whichever is later. Travelers shall make its payment within 30 days following Claimants' execution of the Release (the term "Release" is in the defined below) whichever is later. The $500,000 Supplemental Personal Indemnification Limit of Liability, as part of its policy's Private Company Directors and Officers Liability Coverage, only responds to the asserted shareholder derivative claims on behalf of Selway. Accordingly, the Settlement Agreement will have to acknowledge that fact and recite that such Limit is being paid to the ESOP Plan as directed by Selway to resolve its potential liabilities as a Trustee to the ESOP Plan.

4.  Effective upon the Claimants' execution of the Release the ESOP interests of Max Downing …[1] will be relinquished.

5.  Travelers and Scottsdale agree that they will not seek reimbursement of Defense Expenses or other sums from any of the Releasees. Upon Travelers' and Scottsdale's payment of the amounts set forth in paragraphs 1 and 3, Selway Corporation and its directors and officers agree to release Travelers and Scottsdale from any further liability in connection with the matters set forth in this Term Sheet and such release will include a release any claims against the insurers improperly paid or exhausted their limits in paying for the settlement (as will be further memorialized in a separate release agreement).

6.  The settlement is contingent upon judicial approval by federal court with a final bar to further litigation by Claimants and any non-settling parties against Releasees arising out of matters within the scope of the Release described below. The parties will work together in good faith to present the matter to the federal court in a neutral and objective manner and to do so in a manner conforming to applicable regulations governing settlement of ERISA fiduciary claims and Montana shareholder derivative suits. The parties will work together and endeavor in good faith to avoid argumentative, pejorative, or inflammatory terminology in court pleadings. The director and officer of Selway and the fiduciaries of the ESOP Plan will not be named parties in the federal court approval action. The parties shall stay the Tenold litigation pending completion of the judicial approval process. The Tenold litigation will be dismissed with prejudice, each party to bear their own costs and attorney's fees upon the Insurers' making the settlement payments set forth in ¶¶ 1 and 3 herein.

7.  Claimants shall execute a release ("Release") fully and forever releasing against Releasees all claims, known and unknown, against Releasees that arose prior to the date of the court's

---

[1] As negotiated by the parties, the settlement agreement also called for Max Downing's son, Devon Downing, to relinquish his interest in the ESOP. However, the U.S. Department of Labor has objected to that provision. In deference to the DOL position, Devon Downing's shares will not be forfeited as a result of the settlement or its approval.

approval of the settlement, whichever is later. The Scottsdale and Travelers settlement payments identified above are contingent upon Claimants' execution of the Release and court approval in conjunction with a litigation bar as set forth later in this memorandum.

    a. The parties shall use an MDTL release which shall include, without limitation, the following provisions from the MDTL form: 1) Release of actual and potential claims including but not limited to the claims identified in the Pending Cause, Threatened Cause and any claims arising from the Sale Transaction, against Releasees and their heirs, personal representatives, successors, assigns, agents, past and present directors and officers, employees, attorneys, insurers, past and present ESOP Trustees and Fiduciaries and their attorneys, accountants, auditors and other agents; 2) Release of future damages provision; 3) No admission of liability; 4) Apportionment of payment to lienholders (modified to be appropriate to this case); 5) No additional claims; 6) Stipulation for dismissal with prejudice of the Pending Cause and any other pending litigation the Claimants may have against Releasees (excepting only the court action for approval of this settlement); 7) Disclaimer.

    b. The effective date of the Release will be the date of final court approval of the bar to further litigation, and it will encompass all actual and potential claims arising prior to that date and any actual or potential claims relating to Releasees' involvement in any asset or stock sale of Selway Corporation. The Release will not be executed until the court has finally approved the settlement and bar described herein and the objections of any objectors to the settlement have either been resolved with finality or have become non-appealable. To ensure that the court approval and bar hearing applies to the asset sale, Court approval of the settlement and implementation of the bar will be sought no earlier than the earliest of the following: a) the closing of any sale of substantially all of the assets of Selway to Transco ("Sale Transaction"); b) the termination of the Sale

Transaction or c) the passage of 180 days from the date all parties have executed this Settlement Term Sheet.

c.  Releasees and their counsel will use their best efforts to maximize equity resulting from the Sale Transaction and to draft a proxy statement which contains accurate and complete information related to the Sale Transaction. Releasors acknowledge that there are no guarantees, warranties or representations made concerning the outcome of the sales transaction and that numerous factors outside the control of Releasees and their counsel may impact the Sales Transaction proceeds, including the timing of closing, willingness of creditors to compromise claims, status of work in progress, collection of receivables, etc. Releasors further acknowledge that David B. Cotner and Cotner Law, PLLC ("Cotner") may continue to represent Releasees in the Sales Transaction. The language of this subparagraph shall not create an obligation or legal duty on the part of David B. Cotner, Cotner Law Firm or Releasees to Releasors.

d.  The Release shall contain a statement acknowledging that the settlement provided for in this agreement is fundamentally fair, reasonable and adequate.

e.  The settlement amount shall be paid to the ESOP, court or other appropriate location for the benefit of the ESOP participants, as may be agreed upon by the parties or designated by the Court.

f.  The Release will include language that the Claimants have been represented by counsel, have had access to records and discovery requested by them, that the representative group contains past and present employees of Selway, and that the Claimants are satisfied that they have adequately investigated claims and are satisfied that it is in the best interests of the Plan and Claimants (in their individual and plan representative capacities) to settle the claims for the consideration specified in the Release.

8. The Department of Labor will be notified of the settlement terms and provided an opportunity to object to the settlement at or before the hearing on court approval. The settlement is conditioned upon DOL having no objection to the settlement and providing written assurance that this settlement will effectively resolve all claims and issues with respect to its investigation (including the potential imposition of penalties pursuant to ERISA) and that it will close its investigation file.

9. Max Downing will resign any role he may presently occupy as director of Selway Corporation no later than the execution of the Release.

10. The current Selway ESOP Trustees shall resign no later than the execution of the release.

## C.  This Action Was Initiated to Obtain Equitable and Declaratory Relief Under ERISA.

This action was initiated on October 19, 2018, for the purpose of obtaining equitable relief under ERISA and declaratory and other relief under 28 U.S.C. §§ 2201 and 2202. Petitioners ask for such relief consisting of: (1) approval of the form and timing of a proposed notice of settlement and opportunity to object; (2) approval of a bar order to be entered upon final approval; (3) appointment of an independent trustee of the Selway ESOP who will be responsible for the distribution of proceeds to the Plan participants and, after opportunity to object; and (4) final approval of settlement and entry of bar order. Should the relief requested be granted, the net proceeds of the settlement, after payment of Petitioners' counsels' fees and costs, will be paid to the Selway ESOP.

# DISCUSSION

## A.   Preliminary Approval of the Settlement Agreement Is Appropriate.

### 1.   Preliminary Approval Is Appropriate Under Factors Derived From Fed. R. Civ. P. 23.1.

It has been acknowledged that Fed. R. Civ. P. 23.1(c) governing derivative actions may provide guidance for court approval of settlement, compromise or dismissal of ERISA claims by plan participants or beneficiaries. *Rispler v. Sol Spitz Co.*, 418 F. Supp. 2d 82, 86-87, 92 (E.D. N.Y. 2005), report and recommendation adopted in part, 2005 WL 1285781 (E.D. N.Y. May 31, 2005) (citing *Diduck v. Kaszycki & Sons Contractors Inc.*, 974 F.2d 270 (2d Cir. 1992)[2]; *Coan v. Kaufman*, 349 F. Supp.2d 271 (D. Conn. 2004); *Koerner v. Copenhaver*, 2014 WL 5544051 at **2-3 (C.D. Ill. Nov. 3, 2014). Judicial approval of the settlement, notice procedures, and any proposed bar order provides protection for "the unique derivative nature of ERISA claims…." *Koerner*, 2014 WL 5544051 at **2-3 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985); *Fish v. Greatbank Trust Co.*, 667 F. Supp.2d 949, 952 (N.D. Ill. 2009)).

The Court determines whether the settlement is fair, adequate, reasonable, and not a product of collusion. *Koerner*, 2014 WL 5544051 at *3 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir.2002)). In making these

---

[2] Overruled on other grounds as recognized in *Coan v. Kaufman*, 349 F. Supp. 2d 271, 274 (D. Conn. 2004), aff'd, 457 F.3d 250 (2d Cir. 2006).

determinations, the district court enjoys wide discretion, and in exercising its discretion, the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties. *Maher v. Zapata Corp.*, 714 F.2d 436, 455, n. 31 (5th Cir. 1983) (citing *Lewis v. Newman*, 59 F.R.D. 525, 527 (S.D. N.Y. 1973); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n. 69 (5th Cir.), cert. denied, 439 U.S. 1115 (1978) (neither district court nor appellate court on review, should reach ultimate conclusions on issues of fact and law underlying the dispute)).

Settlement approval is a two-step process. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *Koerner*, 2014 WL 5544051 at *4 (citing *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)[3]). If the Court grants preliminary approval, the parties proceed with the approved notice procedures, and the Court then considers whether to grant final approval and enter a bar order. *Ibid*.

At this preliminary approval stage, the Court determines whether the proposed settlement is within the range of judicial approval, taking into account:

1) the strength of the claims compared to the terms of proposed settlement;
2) the risk, expense, complexity, and likely duration of further litigation;

---

[3] Overruled on other grounds by *Felzen v. Andreas*, 134 F3d 873 (7th Cir. 1998).

3)      the extent of opposition to settlement among affected parties[4];
4)      amount offered in settlement;
5)      experience and views of competent counsel; and
6)      the stage of the proceedings and extent of discovery completed.

*Koerner*, 2014 WL 5544051 at *3-4 (citing *In re AT & T Mobility Wireless Data Svcs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010)); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998) (concerning similar factors for settlement of a class action) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The settlement may be presumed fair and adequate when it is arrived at after arms-length negotiations; sufficient discovery has been taken to allow the court and parties to act intelligently; the counsel involved are competent and experienced; and the number of objectors, or the interest they represent, is not large. *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 321 (N.D. Ill. 1979). In addition to the above factors, the court must be satisfied the settlement was not the result of collusion. *Maher*, 714 F.2d at 455 (citing *Young v. Katz*, 447 F.2d 431, 433 (5th Cir.1971)). Here, the relevant factors support preliminary (and final) approval of the settlement agreement.

Petitioners were in no way guaranteed success on any of their claims. Respondents and releasees denied any wrongdoing. While Petitioners contend the

---

[4] This factor (opposition to the settlement) is appropriate for review at the final fairness hearing only. It cannot be measured yet because notice has not yet issued.

alleged conduct is egregious, Respondents not only denied wrongdoing but further alleged that the complained of conduct had been known to ESOP participants who had never complained. Respondents and releasees also proffered defenses based on causation, i.e., that the complained of conduct had not caused by the losses but rather the company had suffered under regulatory burdens and economic factors. Additionally, some of the liability insurance coverage potentially available to cover the claims was asserted to be "eroding" in nature, meaning money spent defending against the claims would be counted against the remaining limit available for settlement or to cover a judgment against the insureds at a later date.  Respondents and releasees might have succeeded in convincing a trier of fact that no duties had been breached or that Petitioners had appeared at the time to have sanctioned the conduct or that the company's losses were tied to factors beyond the alleged misconduct. Even if the Petitioners prevailed, it may not have been possible to obtain a recovery on the full amount of judgment. Thus, the Petitioners were in no way guaranteed victory or recovery in the event of victory.

Courts have required that discovery, whether informal or formal, must be completed to a sufficient extent as to allow claimants enough information to make an informed decision regarding settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citing *In re*

*Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)). Here, Petitioners have completed enough discovery to support assessment of the extent of damages and the likelihood of success on the merits. This has included review of relevant financial information by retained experts. This extent of discovery has enabled Petitioners to competently evaluate the proposed settlement.

While the parties have conducted voluminous discovery, substantial and burdensome additional discovery would need to be completed if the litigation were to proceed to trial. This would involve forensic accounting, the retention of numerous experts with a variety of different areas of expertise, and the depositions of perhaps dozens of individuals. Continued litigation would ensure a long delay and intensive use of resources. The certainty of recovery under the settlement avoids substantial delay and waste of resources. Thus, the burden of continuing the litigation also supports preliminary approval of settlement.

The settlement amount is fair, reasonable and adequate. The ESOP will receive a net settlement distribution of approximately $3.25 million, after payment of defense fees and costs out of the declining policies and after payment of plaintiffs' fees and costs. Those ESOP assets will benefit individual Plan participants in proportion to their holdings in the plan as governed by applicable ERISA laws and regulations and managed by experienced and not-conflicted ERISA professionals.

Petitioners' attorneys have considerable trial experience in the Montana state and federal courts and extensive experience in ERISA, class action and common fund recovery cases. Petitioners' attorneys are also experienced in analyzing and litigating the extent of liability insurance available to cover claims against defalcating officers, directors and ERISA fiduciaries. Respondents' are similarly experienced. Counsel for both parties support the settlement.

The proposed settlement is the result of intensive, arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. Petitioners' attorneys conducted an independent investigation regarding the extent and value of Petitioners' claims with the full intent of proceeding to trial if necessary to obtain recovery on behalf of both Mr. Tenold and the ESOP. The recovery is significant, benefits the ESOP participants, and does not involve any form of "kickback" to the wrongdoers.

Settlements are particularly favored in "notoriously difficult and unpredictable" litigation such as derivative actions. *Maher*, 714 F.2d at 455; *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (citing *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D. N.Y.1973)). Courts do not lightly reject settlements in such cases. *Maher*, 714 F.2d at 455 (citing *Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960)). Based on this and the

foregoing factors, Petitioners respectfully ask this Court to preliminarily approve the mediated settlement agreement herein.

### 2.     Settlement Is in the Best Interests of Plan Participants as Required by PTE 2003-39.

Under ERISA, a transaction between an ESOP and a party in interest is a prohibited transaction unless a statutory or regulatory exemption is met. 29 U.S.C. § 1106(a)(1)(A) (prohibiting exchange of property between Plan and party in interest); 29 U.S.C. § 1106(a(1)(D) (prohibiting transfer to or use by or for the benefit of a party in interest of any assets of the Plan). These provisions have the practical effect of precluding, or at a minimum chilling, settlements such as the one reached in this case.[5] That is because a plan's claims or "choses in action" are property of the plan. Release of those claims constitutes an exchange and a transfer of property. Here, the plan did not assert the claims but they were asserted on its behalf by the participants therein.

The Department of Labor has promulgated a "Prohibited Transaction Exemption" ("PTE") that is intended to serve as a roadmap for settling breach of fiduciary duty cases where a fiduciary receives a release. The PTE may apply

---

[5] For example, some courts have entertained, albeit briefly, an objection to settlement of an ERISA claim for the failure to comply with specified Prohibited Transaction Exemptions. *See*, *e.g.*, *John Boettcher Sewer & Excavating Co. v. Midwest Operating Engines Welfare Fund,* 803 F. Supp. 1420 (N.D. Indiana 1992) (settlement enforced notwithstanding alleged failure to comply with PTE 1976-1).

because Respondents were parties-in-interest, and because the participants will be giving a release to Respondents.

As indicated in PTE 2003-39, 68 Fed. Reg., 75632 (Dec. 31, 2003), the Department specified a series of requirements needed to meet the exemption. In particular, PTE 2003-39 requires that a settlement involving such a release may be approved under a seven-part test, if:

- there is a genuine controversy involving the plan;

- the transaction is not part of an agreement, arrangement or understanding designed to benefit a party-in-interest;

- the fiduciary that authorizes the settlement has no relationship to, or interest in, any of the parties involved in the litigation, other than the plan, that might affect the exercise of such person's best judgment as a fiduciary;

- the settlement is reasonable in light of the plan's likelihood of full recovery, the risks and costs of litigation, and the value of the claims foregone;

- the terms and conditions of the transaction are not less favorable to the plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances;

- extension of credit by the plan to a party in interest in connection with the settlement of a claim against the party in interest is on terms that are reasonable, taking into consideration the creditworthiness of the party in interest and the time value of money; and

- the transaction is not described in PTE 76-1.

First, there is no serious doubt a genuine controversy involving the plan exists. Petitioners allege Respondents breached both their ERISA and corporate duties, mismanaged plan assets, and caused harm to Petitioners in the process. Specifically, Petitioners have asserted that, in contravention of clear ERISA mandates, ERISA fiduciaries and corporate officers and directors used corporate (and thus ESOP) assets to engage in conflicted interest transactions, reducing the value of Selway Corporation stock and Petitioners' retirement accounts as a result. Petitioners' claims would seek to unwind the challenged transactions and recover the lost value, equal to millions of dollars.

Second and third, the settlement transaction will not be part of an agreement, arrangement or understanding designed to benefit a party-in-interest. Defalcating Plan trustees, fiduciaries and members of the ESOP Administrative Committee should be replaced, as discussed in the following section. Their replacements will have no relationship to, or interest in, the financial well-being of the wrongdoers that might compromise the exercise of their best judgment as fiduciaries.

Fourth, the settlement is reasonable in light of the likelihood of recovery, the risks and costs of litigation, and the value of the claims foregone. Petitioners asserted losses in excess of $6 million, but recovery is not certain as there are questions as to the ability of the wrongdoers to satisfy any judgment and extent of available insurance coverage. The settlement exhausts the acknowledged insurance

coverage for the ERISA claims; any additional insurance recovery would likely require separate coverage litigation. It is for these same reasons that the fifth requirement is satisfied: the terms and conditions of the transaction are not less favorable to the plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

With respect to the last two requirements, there is no extension of credit in the transaction, and the transaction is not described in PTE 76-1.[6]

## B.     The Court Should Appoint a Replacement Trustee for the ESOP.

Petitioners assert that the ESOP, like the corporation itself, has been adversely controlled by defalcating fiduciaries, resulting in ESOP assets managed not for the best interests of Plan participants, but for the benefit of corporate

---

[6] PTE 2003-39 has further requirements for settlements occurring after January 30, 2004. These further requirements include that: a) where the case has not been certified as a class action, an attorney retained to advise the plan on the claim, and having no relationship to parties other than the plan, must determine there is a genuine controversy involving the plan; b) all terms of the settlement must be specifically described in a written settlement agreement or consent decree; c) assets other than cash may be received only under certain conditions; d), e) non-cash assets must be specifically described; f) the fiduciary acting on behalf of the plan must acknowledge in writing that it is a fiduciary with respect to the settlement of the litigation on behalf of the plan; and, g) the plan fiduciary must maintain certain documents relating to the transaction for the persons identified in subsection III(h). Here, the Court is requested to find that a genuine controversy exists and also to appoint a replacement fiduciary, to be agreed upon by the parties and the Department of Labor, who can advise the ESOP as to the existence of a genuine controversy. Moreover, all terms are specifically described in the mediated settlement agreement. No assets other than cash are being transferred to the plan, so subsections c), d) and e) are not at issue. All fiduciaries involved in execution will acknowledge that they are fiduciaries with respect to the settlement on behalf of the plan, and will agree to maintain records concerning this transaction. As a result, the requirements of PTE 2003-39 have been met in this case.

management. Like other complained of transactions, this settlement constitutes a transfer of ESOP property (its "choses in action" or claims against releasees).

To protect against this transfer constituting another conflicted transaction under 29 U.S.C.A. §§ 1104(a)(1) and 1106(a)(1)(D), (b)(1), the ESOP must be free of adverse control and placed under the management of a qualified, independent professional trustee capable of executing a settlement without compromised loyalty. *See* 68 Fed. Reg. 75632 at pp. 6-7, 13, 16 (Dec. 31, 2003).

This Court has power to appoint a replacement trustee under 29 U.S.C.A. § 1109(a), which provides that compromised fiduciaries are "subject to such … equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." The parties are working together to identify a mutually acceptable replacement trustee.

## C.    Entry of a Bar Order Is Appropriate.

The mediated settlement agreement requires full and complete release and a bar order protecting Respondents and related parties from other claims premised upon, arising from or related to the same conduct. This is a reasonable condition of settlement. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1232 (9th Cir. 1989) (bar order, as condition of settling securities claims, is reasonable and within equitable power of court to encourage settlement); *Eichenholtz v. Brennan*, 52 F.3d 478, 489 (3d Cir 1995) (upholding bar order against contribution and indemnification

claims); *In re Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992); *Munford Inc. v. Munford Inc.*, 97 F.3d 449, 456 (11th Cir. 1996); *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 161, n. 3 (4th Cir. 1991).

Here, as in the foregoing cases, a bar order is necessary for complete peace. The parties ask for the Court's approval and entry of a bar order pertaining to the release of any and all complaints, claims, charges, liabilities, claims for relief, demands, suits, actions or causes of action arising out of matters within the scope of the Release as described by the terms of the mediated settlement agreement:

  a. The parties shall use an MDTL release which shall include, without limitation, the following provisions from the MDTL form: 1) Release of actual and potential claims including but not limited to the claims identified in the Pending Cause, Threatened Cause and any claims arising from the Sale Transaction, against Releasees and their heirs, personal representatives, successors, assigns, agents, past and present directors and officers, employees, attorneys, insurers, past and present ESOP Trustees and Fiduciaries and their attorneys, accountants, auditors and other agents; 2) Release of future damages provision; 3) No admission of liability; 4) Apportionment of payment to lienholders (modified to be appropriate to this case); 5) No additional claims; 6) Stipulation for dismissal with prejudice of the Pending Cause and any other pending litigation the Claimants may have against Releasees (excepting only the court action for approval of this settlement); 7) Disclaimer.

  b. The effective date of the Release will be the date of final court approval of the bar to further litigation, and it will encompass all actual and potential claims arising prior to that date and any actual or potential claims relating to Releasees' involvement in any asset or stock sale of Selway Corporation. The Release will not be executed until the

court has finally approved the settlement and bar described
herein and the objections of any objectors to the settlement
have either been resolved with finality or have become non-
appealable. To ensure that the court approval and bar
hearing applies to the asset sale, Court approval of the
settlement and implementation of the bar will be sought no
earlier than the earliest of the following: a) the closing of
any sale of substantially all of the assets of Selway to
Transco ("Sale Transaction"); b) the termination of the Sale
Transaction or c) the passage of 180 days from the date all
parties have executed this Settlement Term Sheet.

Exh. 4, Settlement Term Sheet at ¶ 7(a), (b). Importantly, notice to potential

claimants is not necessary. This is because the ESOP owns all or substantially all

of the shares of the company; the ESOP is now independent of the alleged

tortfeasor officers, directors and managing agents; and the settlement is otherwise

in the best interests of the ESOP and its participants. Nevertheless, because

participants who are not named herein would be subject to the bar order,

petitioners will give notice to all ESOP participants as set forth below.

**D.      The Court Should Approve the Proposed Form and Timing of Notice to
          Potential Claimants Who Will Be Subject to the Bar Order.**

With respect to the ERISA claims, a replacement fiduciary will enter into the

settlement agreement, the replacement fiduciary will be independent of and

adverse to the wrongdoers, the settlement agreement is made at arms-length, and

the settlement is otherwise beneficial to the plan and its beneficiaries. Accordingly,

no further notice is required pursuant to either 29 U.S.C. § 1132 or Fed. R. Civ. P.

23.1.

Nevertheless, because Plan participants who are not named as individual

Petitioners would be subject to the Bar Order, the parties contemplate that notice

shall be given to all Plan participants in the form shown as attached Exhibit 1 to

the motion. This proposed notice form describes the claims, the general settlement

terms, the procedures for objecting, and the deadlines for responding to the notice.

It provides instructions as to where additional information may be obtained. And it

informs recipients about the dates relevant to the approval process. Such a notice

form has been consistently found appropriate and adequate. *Bell Atl. Corp. v.*

*Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993); *Maher*, 714 F.2d at 451 (surveying the

precedents).

Notice shall be mailed at Petitioners' expense to the last known address

within five (5) days of the Court's order granting preliminary approval of the

mediated settlement agreement. It is well established that notice mailed to last

known addresses satisfies due process and constitutes best notice practicable. *See*

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) (notice sent

nineteen days before fairness hearing did not violate due process); *Armstrong v.*

*Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) (notice sent twelve

days before fairness hearing did not violate due process). The notice will also go to the Department of Labor and be published in a local newspaper.

Notice must be structured in terms of time and content to accommodate rational decisions as to whether recipients should intervene in the settlement proceedings or otherwise make their views known and, if they choose to do so, have sufficient opportunity to prepare a position. *Milstein v. Werner*, 57 F.R.D. 515, 518 (S.D.N.Y. 1972) (approving brochure sent 38 days in advance of the hearing, which identified actions being terminated, detailed course of litigations, and adequately and reasonably presented  terms of settlement). Here, because the Plan participants are already beneficiaries of the mediated settlement agreement, the parties do not anticipate that notice to the participants will result in any objection or intervention. Nevertheless, recipients shall be given 30 days to respond. This is adequate and appropriate under the circumstances. *See*, e.g., *Silber v. Mabon*, 18 F.3d 1449, 1452-53 (9th Cir. 1994) (court approved five-week notice procedure, with opt-out date roughly 40 days from initial date of mailing of notice, and 35 days from initial date of publication of notice); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (court approved notice procedure providing for mailing of notice 31 days before deadline for written objections and 45 days before final settlement approval hearing); *Gilman v. Independence Blue Cross*, 1997 WL 633568 (E.D. Pa. 1997) (opt-out deadline 47 days after notice

first published); *In re Prudential Ins. Co. of America Sales Practice Litig.* 962 F. Supp. 450, 507 (D. N.J. 1997) (notice sent first week of November for December 19 opt-out date).

Both the proposed form of and the proposed procedure for notice meet the requirements for compromising the claims at issue herein. Accordingly, Petitioners ask the Court to approve the form and procedure so that the parties may move forward with giving notice in anticipation of proceeding thereafter with a hearing for final approval of the mediated settlement agreement.

## CONCLUSION

For the foregoing reasons, this unopposed motion for preliminary approval should be granted.

DATED this 16th day of November 2018.

/s/ John L. Amsden
BECK AMSDEN & STALPES, PLLC

*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

This brief complies with L.R. 7.1(d)(2). There are 6,371 words in this brief, excluding the caption, table of contents, table of authorities, exhibit index and certificate of compliance.

DATED this 16th day of November 2018.

/s/ John L. Amsden
BECK, AMSDEN & STALPES, PLLC

*Attorneys for Petitioners*